## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**PRESTON LEWIS**                                    **CIVIL ACTION**

**VERSUS**                                           **NO. 22-4007**

**JONATHAN FRIEDMAN et al.**                         **SECTION: "G"**


### ORDER AND REASONS

This litigation arises from law enforcement's alleged arrest of *pro se* Plaintiff Preston Lewis ("Plaintiff") and the seizure of $11,020 in cash on Plaintiff's person (the "Cash").[1] Plaintiff brings claims against Defendants Jonathan Friedman ("Friedman"), Raymond Del Valle ("Del Valle"), Troy Pichon ("Pichon"), Steve Lynn ("Lynn"), Trent Cuccia ("Cuccia"), Jacob Weixler ("Weixler"), K-9 Boyka, National Railroad Passenger Corporation, Amtrak ("Amtrak"),[2] Amtrak Police Department,[3] Office of National Drug Control Policy, Blaise D'Antoni ("D'Antoni"), Randy Hoth ("Hoth"), Clerk of Court, Orleans Parish ("Clerk of Court"), Melvin Zeno, Alexandra Giavotella, and Cuong Vu (collectively, "Defendants").[4] Before the Court are Friedman's "Motion to Dismiss Amended Complaint" and Pichon, Cuccia, and Lynn's (collectively, the

---

[1] *See* Rec. Doc. 39.

[2] Plaintiff incorrectly refers to National Railroad Passenger Corporation, Amtrak as "Amtrack National Railroad Passanger Corporation" in the Complaint. *Id*. at 1.

[3] Plaintiff incorrectly refers to Amtrak Police Department as "Amtrack Police Department." *Id*.

[4] *Id.*

"State Troopers") "Motion to Dismiss Amended Complaint."[5] Plaintiff opposes the motions.[6] Friedman has filed a reply in further support of his motion to dismiss and Plaintiff has filed a sur-reply in further opposition to that motion.[7] Considering the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motions, dismisses Plaintiff's claims for damages against Friedman and the State Troopers (collectively, "Movants") in their official capacities without prejudice and dismisses Plaintiff's remaining claims against Friedman and the State Troopers with prejudice as prescribed.

## I. Background

### A.    *Factual Background*

In the Amended Complaint, Plaintiff alleges that, on October 2, 2019, while boarding an Amtrak train in New Orleans, Louisiana, he was approached by Del Valle and Pichon, who told him they were looking for an individual named Brandon Lewis.[8] After Plaintiff told them "I'm not Brandon" and presented his identification card, Plaintiff alleges he was detained and taken to a room where he "was searched against his will."[9] Specifically, Plaintiff alleges that Del Valle and Pichon waited for Lynn to arrive with his K-9, at which time the officers "spread [Plaintiff's] bags over the room" and allowed the dog to do an "open air sniff."[10] Plaintiff contends that he was wearing a heart monitor, sat for a long period of time, complained of chest pains, "and was

---

[5] Rec. Doc. 40; Rec. Doc. 47.

[6] Rec. Docs. 41, 56.

[7] Rec. Doc. 46; Rec. Doc. 53.

[8] Rec. Doc. 39 at 6.

[9] *Id.*

[10] *Id.* at 6–7.

told to shut up" as the officers searched his bags.[11] Plaintiff alleges that the officers found the Cash in one of his bags and proceeded to confiscate the Cash and his Amtrak ticket even though Plaintiff asserted his Fifth Amendment rights and told them he had a receipt for the Cash.[12]

Plaintiff further alleges that, after he was released, he "was presented a notice of pending forfeiture" and he filed "a claim with the Orleans Parish District Court" to get his property back.[13] After learning that the courthouse was closed in early 2020 due to COVID-19, Plaintiff avers that he called the District Attorney's Office and spoke with D'Antoni, "an attorney of the said property forfeiture."[14] Plaintiff asserts that D'Antoni told Plaintiff "the case was over and that the court sent certified mail to the address [Plaintiff] had on file and that [Plaintiff] lost [his] property for failure to respond."[15] Plaintiff further asserts that the proceeding "was held in a criminal court where [he] was told it was a civil forfeiture" and that, despite his efforts, he never received a response from D'Antoni after their conversation.[16]

Plaintiff alleges that he hired Weixler as his attorney in February 2021 and filed a "motion for default."[17] Plaintiff avers that Weixler told him "that he found the court papers [Plaintiff] filed with the court on November 1, 2019, in a hidden folder where no one could find it."[18] Plaintiff alleges that, "[i]n those papers was a search and seizure warrant for the property of [Plaintiff]

---

[11] *Id.* at 7.

[12] *Id.*

[13] *Id.* at 10.

[14] *Id.* at 11.

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 12.

signed by Friedman on October 4, 2019, days after the initial confiscation of [the Cash]."[19] Plaintiff contends that Weixler told him that Hoth, "a new assistant district attorney," would be taking over the case and that he "should get his property back."[20] Plaintiff alleges that he "heard that promise for the remainder of the 2021 year" and that "the court would have a hearing on the motion soon."[21] Plaintiff avers that, having had "little to no contact with [] Weixler," he determined through his own research that he had an upcoming court date on the matter on September 21, 2022, despite never receiving any notice from the court or Weixler.[22] Plaintiff avers that, at the hearing, he obtained a judgment ordering his property returned.[23] However, Plaintiff alleges that the judge presiding over the hearing told him that "since [] Weixler had not recused himself of the case that he would have to write the ex parte motion for the return of the property of Plaintiff."[24]

Plaintiff contends that "he took the court order to every evidence location in New Orleans" but "was told they have no such property" and he "has not had any of his property returned to him."[25] Thus, Plaintiff explicitly brings claims against Defendants for negligence, claims under 42 U.S.C. § 1983 for deprivation of his civil rights in violation of the Fourth, Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendments (collectively, the "Section 1983 Claims"), and claims under

---

[19] *Id.*

[20] *Id.*

[21] *Id.* at 12.

[22] *Id.* at 13.

[23] *Id.*

[24] *Id.*

[25] *Id.*

Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act Claim").[26] Plaintiff also seeks $50 million in damages.[27]

**B.      *Procedural Background/Federal Court Proceedings***

On October 18, 2022, Plaintiff filed a Complaint in this Court.[28] On December 8, 2022, Friedman filed a Motion to Dismiss for Lack of Jurisdiction, Failure to State a Claim, and for Insufficient Service of Process ("Friedman's First Motion to Dismiss").[29] On January 5, 2023, the State Troopers filed a Motion to Dismiss for Lack of Jurisdiction, Failure to State a Claim, and for Insufficient Service of Process ("State Troopers' First Motion to Dismiss").

On January 13, 2023, the Magistrate Judge granted Plaintiff leave to file an amended complaint.[30] Plaintiff filed the Amended Complaint on February 20, 2023.[31] On February 24, 2023, Friedman filed a "Motion to Dismiss the Amended Complaint" ("Friedman's Second Motion to Dismiss").[32] On March 11, 2023, Lewis filed an opposition to Friedman's Second Motion to Dismiss.[33] On March 27, 2023, with leave of Court, Friedman filed a reply memorandum in further support of Friedman's Second Motion to Dismiss.[34] With leave of Court,

---

[26] *See id.* at 14, 15.

[27] *Id*. at 16.

[28] Rec. Doc. 1.

[29] Rec. Doc. 9.

[30] Rec. Doc. 25; *see also* Rec. Doc. 10.

[31] Rec. Doc. 39.

[32] Rec. Doc. 40.

'[33] Rec. Doc. 41.

[34] Rec. Doc. 46.

Plaintiff filed a sur-reply memorandum in further opposition to the motion on April 24, 2023.[35]

Meanwhile, on March 20, 2023, the Court mooted Friedman's First Motion to Dismiss and the State Troopers' First Motion to Dismiss to avoid confusion and instructed the State Troopers that they could file a motion to dismiss the Amended Complaint.[36] Accordingly, the State Troopers filed a Motion to Dismiss the Amended Complaint on April 10, 2023, which was set for submission on May 3, 2023 (the "State Troopers Second Motion to Dismiss").[37] Pursuant to Local Rule 7.5, any opposition to a motion must be filed eight days before the noticed submission date. Therefore, any opposition to the instant motion was due on April 25, 2023. On May 1, 2023, Plaintiff filed an untimely opposition to the State Trooper's Second Motion to Dismiss.[38] However, consider Plaintiff's *pro se* status, the Court exercises its discretion and considers his untimely opposition.

## II. Parties' Arguments

### A.    *Friedman's Second Motion to Dismiss*

#### 1.    Friedman's Arguments in Support of the Motion

Friedman advances six arguments in support of his motion to dismiss. First, Friedman argues Plaintiff's attempted service on him was improper pursuant to Federal Rule of Civil Procedure 4.[39] Specifically, Friedman argues that service was improper because Plaintiff personally mailed a copy of the summons and complaint "through the United States Postal Service

---

[35] Rec. Doc. 53.

[36] Rec. Doc. 42.

[37] Rec. Doc. 47.

[38] Rec. Doc. 56.

[39] Rec. Doc. 40-1 at 4.

via certified mail."[40]

Second, Friedman argues that the Court lacks subject matter jurisdiction over Plaintiff's official capacity claims against him.[41] Friedman avers that, to the extent Plaintiff asserts official capacity claims against Friedman as a state actor, the State is immune from lawsuit for monetary damages or equitable relief pursuant to the Eleventh Amendment.[42]

Third, Friedman argues that Plaintiff is not entitled to injunctive relief against him.[43] Specifically, Friedman avers that Plaintiff's request for injunctive relief based on the Section 1983 Claims fail because Plaintiff does not allege that Friedman violated a declaratory decree or that declaratory relief is otherwise unavailable.[44]

Fourth, Friedman argues that any claim for damages against him in his individual capacity is barred by judicial immunity.[45] Friedman asserts that Plaintiff's allegations asserting "the subject warrant was incorrectly dated, or that it was dated after the subject search was conducted does not deprive [] Friedman of absolute judicial immunity."[46] Friedman avers that, "as a magistrate judge for the [Orleans Parish] Criminal District Court, [he was] statutorily authorized to issue warrants" and thus did not act without jurisdiction.[47] Thus, Friedman concludes that he

---

[40] *Id.*

[41] *See id.* at 6.

[42] *See id.* at 6–8.

[43] *See id.* at 7.

[44] *Id.* at 14.

[45] *Id.* at 8.

[46] *Id.* at 10.

[47] *Id.*

is entitled to judicial immunity.[48]

Fifth, Friedman argues that Plaintiff's claims are prescribed.[49] Friedman asserts that the Section 1983 Claims, and any remaining state law claims, are subject to the one-year prescriptive period codified in Louisiana Civil Code article 3492.[50] Friedman avers that the prescriptive period begins to accrue "when the plaintiff knows or has reason to know of the injury on which his action is based."[51] Friedman contends that Plaintiff's claims were prescribed by the time he commenced this action in October 2022 because, "[b]ased upon Plaintiff's own admission, he knew of the warrant by February 2021 when he hired Weixler such that his claims "prescribed in February 2022."[52]

Sixth, Friedman argues that the Rehabilitation Act Claim should be dismissed for failure to state a claim.[53] Friedman asserts that it is not clear whether Plaintiff is asserting this claim against him and, regardless, the Rehabilitation Act "does not provide for individual liability."[54] Therefore, Friedman concludes that any Rehabilitation Act claim against him should be dismissed.[55]

### 2.     Plaintiff's Arguments in Opposition to the Motion

In opposition, Plaintiff asserts four arguments. First, Plaintiff asserts that service was not

---

[48] *Id*. at 10–11.

[49] *Id*. at 11.

[50] *Id*.

[51] *Id*. at 12.

[52] *Id*.

[53] *See id.* at 13.

[54] *Id*.

[55] *Id*.

improper because: (1) Friedman "was served on time . . . by receiving his complaint and summons by someone over the age of 18;" (2) Louisiana Attorney General Jeff Landry was served with a copy of the complaint; and (3) "Plaintiff used the long-arm service of process" by sending "mail to [Friedman's] usual place of business."[56] Second, Plaintiff argues that he has standing to bring his claims against Friedman because he suffered medical injury and economic loss due to his arrest.[57] Plaintiff asserts that "4th amendment doctrine applies" because "[n]o receipt for the [Cash] was ever shown to [Friedman] being none was in existence."[58] Third, Plaintiff argues that the Eleventh Amendment does not bar Plaintiff's official capacity claims against Friedman because Friedman "did not uphold policy and procedures of Orleans Parish District Court and fail[ed] to uphold the United State Constitution" by "[s]igning a warrant two days after a search and seizure occurred."[59] Fourth, Plaintiff asserts that he states a claim against Friedman because "[t]he warrant was signed after Plaintiff addressed the court in a civil forfeiture on November 11, 2019," and "[c]ourts should have and document everything that goes on in court unless they are trying to cover up something or someone."[60] Therefore, Plaintiff argues he is entitled to injunctive relief.[61]

### 3.  Friedman's Arguments in Further Support of the Motion

In the reply memorandum, Friedman advanced five arguments in further support of the

---

[56] Rec. Doc. 41 at 2.

[57] *Id*. at 7.

[58] *Id*.

[59] *Id*. at 10.

[60] *Id*. at 13.

[61] *Id*.

motion.[62] First, Friedman reasserts that Plaintiff failed to serve him directly and personally sent a copy of the summons and complaint in violation of Federal Rule of Civil Procedure 4.[63] Second, Friedman reiterates that the Court does not have subject matter jurisdiction over any official capacity claims against him for damages.[64] Third, Friedman disputes Plaintiff's argument that he is not entitled to judicial immunity if he incorrectly dated the warrant given that he "acted upon the warrant with full authority granted to him by the Louisiana law."[65] Fourth, Friedman argues that Plaintiff fails to address his arguments that the claims are prescribed, that he fails to state the Rehabilitation Act Claim, or that Section 1983 prohibits injunctive relief, amounting to a waiver of these claims.[66] Fifth, Friedman asserts that Plaintiff's standing to bring the claims is not contested and thus irrelevant.[67]

### 4. Plaintiff's Arguments in Further Opposition to the Motion

In further opposition to Friedman's motion, Plaintiff asserts five arguments. First, Plaintiff asserts that Friedman was properly served because certified mail "is a proper way to service a summons and complaint on an individual in the State of Louisiana."[68] Second, Plaintiff asserts that this Court has federal question jurisdiction over his claims.[69] Third, Plaintiff avers that the "[s]tatement of counsel in their briefs or arguments while enlightening to the court are not

---

[62] Rec. Doc. 46.

[63] *Id*. at 2–3.

[64] *Id*. at 3–4.

[65] *Id.* at 4–5.

[66] *Id*. at 5.

[67] *Id*.

[68] Rec. Doc. 53 at 5–6.

[69] *Id*. at 6.

sufficient for purpose of granting a motion to dismiss."[70] Fourth, Plaintiff reasserts his argument that Friedman is not entitled to judicial immunity.[71] Fifth, Plaintiff reasserts that he is entitled to declaratory and injunctive relief from rulings by another judge, along with money damages.[72] Sixth, Plaintiff argues that he "has lost out on his business and business opportunity from the acts committed by . . . Friedman under the Rehabilitation Act.[73] Seventh, Plaintiff states that he "would like to see Defendants and Attorneys [a]ffidavits and [o]ath of office sworn to practice law in the . . . Eastern District of Louisiana" and "a copy of [Friedman's] counsel's bar license under the American Bar Association."[74]

### B.   *The State Troopers' Second Motion to Dismiss*

#### 1.   The State Troopers' Arguments in Support of the Motion

In support of their motion, the State Troopers assert five arguments. First, the State Troopers argue that Plaintiff's claims against them are prescribed.[75] The State Troopers assert that the burden is on Plaintiff to show that his claims are not prescribed given that the alleged conduct on which the claims are based occurred more than one year prior to his filing the lawsuit.[76] The State Troopers contend that, after the alleged wrongful search on October 2, 2019, "Plaintiff admits that he called N.O.P.D., . . . was presented with a notice of pending forfeiture, and 'took it upon himself to file a claim with the Orleans Parish District Court to get his property

---

[70] *Id.*

[71] *See id.* at 7–14.

[72] *Id.* at 14.

[73] *See id.* at 15.

[74] *Id.* at 16.

[75] *See* Rec. Doc. 47-1 at 6.

[76] *Id.* at 6–7.

back.'"[77] Thus, the State Troopers aver that any claims related to their actions are time-barred, including "any unadvanced claim for race-based disparate treatment/discrimination related to his arrest, search, and seizure," or any claim made under the Rehabilitation Act.[78]

Second, the State Troopers argue that any official capacity claims for damages against them are barred by the Eleventh Amendment.[79] The State Troopers further assert that they do not waive their right to sovereign immunity, and so the Court lacks subject matter jurisdiction over any official capacity claims.[80]

Third, the State Troopers argue that they are entitled to qualified immunity because "Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property."[81] The State Troopers aver that Plaintiff has not alleged that they "violated a clearly established constitutional right or that their conduct was objectively unreasonable in light of clearly established law."[82] Rather, the State Troopers assert that they "were acting reasonably and within the scope of their discretionary duties."[83]

Fourth, the State Troopers argue that Plaintiff fails to state a claim against them under the Rehabilitation Act because "the Act does not provide for individual liability."[84] Therefore, the

---

[77] *Id*. at 7 (quoting Rec. Doc. 39 at 8, 10).

[78] *Id* at 7–8. (citing *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011)).

[79] *Id*. at 8–10.

[80] *Id*. at 9.

[81] *Id*. at 11.

[82] *Id*.

[83] *Id*. at 13.

[84] *Id*. at 13–14.

State Troopers assert that "such a claim is untenable" and "should be dismissed."[85]

Fifth, the State Troopers argue that "Plaintiff improperly attempted service upon [them] by personally placing a copy of the summons and complaint, addressed to them at the Louisiana State Troopers Association, through the United State Postal Service via certified mail."[86] The State Troopers assert that this attempt at service violates the Federal Rules of Civil Procedure and Louisiana law.[87]

Fifth, the State Troopers argue that Plaintiff is not entitled to injunctive relief against them.[88] The State Troopers assert that injunctive relief under Section 1983 "cannot be awarded against a state official, individually."[89] The State Troopers further argue that Plaintiff is not entitled to injunctive relief against them in their official capacities under the *Ex Parte Young* doctrine because the alleged Constitutional violation "began and ended on October 2, 2019."[90]

### 2. Plaintiff's Arguments in Opposition to the Motion

In opposition to the State Troopers' motion, Plaintiff asserts eight arguments. First, Plaintiff asserts that his claims against the State Troopers are not barred by the 11th Amendment because "the State [T]roopers acted willfully to deprive Plaintiff of his right to travel free from illegal search and seizure."[91] Second, Plaintiff argues that his claims are not prescribed because he "successfully made his complaint within [1 year] after learning the names of [the State

---

[85] *Id.*

[86] *Id.* at 14.

[87] *See id.* at 14–15.

[88] *Id.* at 15.

[89] *Id.*

[90] *Id.* at 15–16.

[91] Rec. Doc. 56-1 at 11.

Troopers]."[92] Third, Plaintiff avers that he "never gave [them] consent to search nor was there anything in plain view to give rise to the officers probable cause to carry out their search and seizure."[93] Fourth, Plaintiff contends that his due process rights were violated, giving rise to a negligence cause of action for loss of property, loss of business, and loss of medical treatment, and that anyone hindering due process rights is subject to suit.[94]

Fifth, Plaintiff argues that he is entitled to injunctive relief because his loss of business opportunity, harm to his health, and "loss of life experience" is irreparable and he has still not received the Cash back in over three years.[95] Sixth, Plaintiff asserts that service on the State Troopers was proper because certified mail is acceptable under the Federal Rules, the State Troopers "received the complaint and summons by someone who signed for the mail and issued it to [them]," the person who signed for the mail was an authorized agent, and "the post office is within the government and [the State Troopers] are a part of the state."[96] Seventh, Plaintiff avers that he states a claim under the Rehabilitation Act because he "was denied access to board the amtrack train to conduct business for his wellbeing," the Cash was taken after the State Troopers noticed he was wearing a heart monitor, and because the Plaintiff is disabled.[97] Eighth, Plaintiff contends that the State Troopers should be held liable for failing to intervene, falsifying evidence, engaging in an illegal search, and causing him emotional stress by leaving him stranded in New

---

[92] *Id.*

[93] *Id.* at 14.

[94] *Id.* at 17. 19.

[95] *Id.* at 19–20.

[96] *Id.* at 20.

[97] *Id.* at 21.

Orleans.[98] Therefore, Plaintiff concludes that the State Troopers' motion should be denied.[99]

### III. Legal Standards

#### A.    Legal Standard for a Rule 12(b)(1) Motion to Dismiss

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute."[100] It is a "first principle of jurisdiction" that a federal court must dismiss an action "whenever it appears that subject matter jurisdiction is lacking."[101] Accordingly, a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" it.[102] "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[103] This practice "prevents a court without jurisdiction from prematurely dismissing a case with prejudice."[104] When opposing a 12(b)(1) motion, as at all other times, the party asserting jurisdiction bears the burden to prove that the Court has jurisdiction.[105]

#### B.    Legal Standard for a Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for

---

[98] *See id.* at 21–23.

[99] *Id.* at 23–24.

[100] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

[101] *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citations omitted).

[102] *In re FEMA Trailer Formaldehyde Prod. Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citations omitted).

[103] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

[104] *In re FEMA Trailer*, 668 F.3d at 287.

[105] *Ramming*, 281 F.3d at 161.

failure to state a claim upon which relief can be granted."[106] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[107] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[108] "Factual allegations must be enough to raise a right to relief above the speculative level."[109] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[110]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[111] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[112] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[113] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[114]

The complaint need not contain detailed factual allegations, but it must offer more than

---

[106] Fed. R. Civ. P. 12(b)(6).

[107] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[108] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[109] *Twombly*, 550 U.S. at 556.

[110] *Id.* at 570.

[111] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[112] *Iqbal*, 556 U.S. at 677–78.

[113] *Id.* at 679.

[114] *Id.* at 678.

mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[115] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[116] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[117] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[118]

## IV. Analysis

Movants first seek to dismiss Plaintiff's claims for damages against them in their official capacities pursuant to the Eleventh Amendment to the United State Constitution for lack of subject matter jurisdiction. Movants also assert that Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) because: (1) they are prescribed; (2) Movants are entitled to immunity as to any claims for damages against them in their individual capacities; and (3) injunctive relief against them is not available pursuant to 42 U.S.C. § 1983. Finally, Movants assert that the claims should be dismissed pursuant to Rule 12(b)(5) for insufficient service of process. Plaintiff opposes the motions. As required by the Fifth Circuit, the Court addresses the jurisdictional issues first and finds that it lacks subject matter jurisdiction over Plaintiff's claims for damages against Movants in their official capacities.[119] The Court also finds that Plaintiff's remaining claims

---

[115] *Id.*

[116] *Id.*

[117] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[118] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

[119] *See Ramming*, 281 F.3d at 161 ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the

against Movants are prescribed and must be dismissed.

**A.    *The Court Lacks Subject Matter Jurisdiction over Plaintiff's Claims for Damages against Movants in their Official Capacities under the Eleventh Amendment***

Movants argue that Plaintiff's claims against them in their official capacities for damages are barred by the Eleventh Amendment to the United States Constitution and the doctrine of sovereign immunity.[120] Because this argument is jurisdictional, the Court considers it under Rule 12(b)(1).[121] Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens."[122] "By statute, Louisiana has refused to consent to suits brought against it in federal court.[123] Furthermore, an official capacity suit against a state official is a suit against that state.[124] For example, "[a] suit against a Louisiana state court judge in his or her official capacity is a suit against a state official and barred by the Eleventh Amendment."[125] Furthermore, a suit against a Louisiana state trooper in his or her official capacity is barred by the Eleventh Amendment because the Louisiana State Police is considered an arm of the state.[126] Therefore, Plaintiff's claims for damages against Friedman, a Louisiana state court judge, and the State Troopers, Louisiana state police officers, in their official capacities

---

merits.") (citations omitted).

[120] Rec. Docs. 40-1 at 6–8, 47-1 at 8–10.

[121] *See Jefferson v. La. State Supreme Court*, 46 Fed. App'x 732, 2002 WL 1973897, at *1 (5th Cir. 2002).

[122] *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This immunity extends to suits brought under state law. *See Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997).

[123] *Cozzo v. Tangipahoa Par. Council-President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002) ("By statute, Louisiana has refused any such waiver of its Eleventh Amendment sovereign immunity regarding suits in federal courts.") (citing La. Rev. Stat. § 13:5106(A)).

[124] *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[125] *Price v. Irons*, No. 19-11451, 2020 WL 1638376, at *3, *5 (E.D. La. Apr. 2, 2022).

[126] *See Laveregne v. Louisiana State Police*, No. 13-2189, 2014 WL 906285, at *3 (E.D. La. Mar. 7, 2014) (citing cases).

must be dismissed without prejudice.[127]

### B.  *Plaintiff's Remaining Claims are Prescribed*

Movants also argue that Plaintiff's remaining claims are prescribed because the Amended Complaint alleges that the wrongful search and seizure occurred on October 2, 2019, Friedman signed the warrant for the search on October 4, 2019, and Plaintiff filed a claim for the Cash in state court in November 2019, but did not file the instant suit until almost three years later.[128] In the Amended Complaint, Plaintiff brings claims for "[n]egligence and intentional conduct . . . under the color of law," claims for violation of his constitutional rights pursuant to Section 1983, and claims pursuant to "ADA section 504 of the 1973 Rehabilitation Act."[129] Thus, reading the Complaint broadly, the Court addresses the issue of prescription regarding any claims under Louisiana tort law, Title II of the Americans with Disabilities Act of 1990 ("ADA") the Rehabilitation Act and Section 1983.[130]

In assessing whether the Section 1983, Rehabilitation Act, and ADA Title II claims are prescribed, the Fifth Circuit directs the Court to borrow the limitations period from state tort law.[131] Although federal law determines when a civil rights action accrues, courts should look to

---

[127] Plaintiff argues without support that this Court must have jurisdiction because it granted Movants' motions for extension of time to answer. Rec. Docs. 19-1 at 3, 30. The Court rejects this argument because a party cannot waive the lack of subject matter jurisdiction and the issue must be addressed by a court when necessary, even if *sua sponte*. *See Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

[128] *See* Rec. Docs. 40-1 at 11–12, 47-1 at 6–8.

[129] Rec. Doc. 39 at 9.

[130] Plaintiff's ADA claims against Movants would fall under Title II of the ADA as a claim against state officials. *See* 42 U.S.C. § 12131 *et seq*.

[131] *McClintock v. Sch. Bd. of East Feliciana Parish*, 299 Fed. App'x 363, 365 (5th Cir. 2008) (addressing the prescriptive period for Section 1983 claims); *Frame v. City of Arlington*, 657 F.3d 215, 236–237 (5th Cir. 2011) (addressing the prescriptive periods for claims under Title II of the ADA and Section 504 of the Rehabilitation Act). Therefore, Plaintiff's tort claims under Louisiana law are clearly subject to the one-year prescriptive period and are subject to the same analysis as Plaintiff's federal claims.

state law for the applicable limitations period and tolling provisions.[132] In Louisiana, state law

tort claims have a one-year prescriptive period.[133] "The burden of proof is normally on the party

pleading prescription; however, if on the face of the [Complaint] it appears that prescription has

run, ... the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive

period."[134]

### 1.    Plaintiff's Remaining Claims Are Prescribed on the Face of the Complaint

On the face of the Amended Complaint, it appears that prescription has run with regards

to Plaintiff's claims against Friedman and the State Troopers. Plaintiff alleges that the State

Troopers searched him and seized the Cash on October 2, 2019, and that Friedman signed the

warrant for that search on October 4, 2019. There is no allegation in the Amended Complaint

concerning actions by Movants that occurred after October 4, 2019. Further, Plaintiff knew he

suffered harm soon after the incident because he admits he called the New Orleans Police

Department ("NOPD") "within the statutory period" to recover his property and, on November

1, 2019, filed "court papers" regarding the incident.[135] A civil rights cause of action accrues when

a plaintiff knows or has reason to know of the injury.[136] Thus, Plaintiff's claims began to accrue

by November 1, 2019, at the latest. However, Plaintiff did not commence this litigation until

October 18, 2022. Accordingly, it appears that the one-year prescriptive period for Plaintiff's

---

[132] *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993) ("In applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions.").

[133] *McClintock*, 299 Fed. App'x at 366 (quoting La. Civ. Code art. 3692).

[134] *In re Taxotere (Docetaxel) Prods. Liab. Litig.*, 995 F.3d 384, 388–89 (5th Cir. 2021) (quoting *Younger v. Marshall Indus. Inc.*, 618 So. 2d 866, 869 (La. 1993)).

[135] Rec. Doc. 39 at 11–12.

[136] *See Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992).

claims has run from the face of the Amended Complaint.

### 2.     The Prescriptive Period Has Not Been Suspended or Interrupted

Given that Plaintiff's claims appear prescribed on the face of the Amended Complaint, the burden shifts to Plaintiff to prove a suspension or interruption of the prescriptive period. Plaintiff does not address whether the prescriptive period should be suspended or interrupted. However, "[u]nder Louisiana law, there is a firmly rooted equitable tolling doctrine known as *contra non valentem agree non currit praescriptio*, which means '[n]o prescription runs against a person unable to bring an action.'"[137] As the Fifth Circuit explains, the *contra non valentem* doctrine applies in only four exceptional circumstances:

> (1) where there was some legal cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; (2) where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the plaintiff from availing himself of his cause of action; (3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.[138]

Although Plaintiff does not address the doctrine, the Court considers the issue given that Plaintiff is proceeding *pro se.* The Amended Complaint alleges that Plaintiff had no way to know the identities of the State Troopers and that Plaintiff first discovered the warrant signed by Friedman when Weixler "found the court papers that [Plaintiff] filed with the court on November 1, 2019, in a hidden folder where no one could find it."[139] Accordingly, the Court examines whether the fourth category, "often named the 'discovery rule,'" applies to toll prescription of Plaintiff's

---

[137] *In re Taxotere*, 995 F.3d at 390 (quoting *R.J. Reynolds Tobacco Co. v. Hudson*, 314 F.2d 776, 786 (5th Cir. 1963)).

[138] *Id.* (citing *Morgan v. Entergy New Orleans, Inc.*, 234 So. 3d 113, 116, 120 (La. Ct. App. 2017)).

[139] Rec. Doc. 39 at 11–12.

claims.[140]

As the Fifth Circuit has explained, the discovery rule applies "only when such ignorance is not willful and does not result from negligence."[141] Constructive notice sufficient to incite a reasonable plaintiff "to call for inquiry about a claim" starts the running of prescription.[142] "A plaintiff has 'an obligation to further investigate the facts in order to pursue his claim before the one-year prescriptive period [] lapses.'"[143]

Plaintiff admits that, after the 2019 incident, he contacted NOPD and an officer told him that the State Troopers "were higher up" but "never provided a name."[144] However, Plaintiff alleges that he did not hire Weixler until February 2021 "to see if this was a real case or did [] he just get robbed by some goons."[145] Plaintiff has also admitted that Weixler was able to locate the warrant signed by Friedman, after which Plaintiff also learned the State Troopers' names.[146]

In other words, Plaintiff admits he was incited to inquire about Movants' identities in October 2019, but he declined to further investigate the facts to pursue his claims before the one-year prescriptive period lapsed, instead choosing to wait over one year, until February 2021, to hire Weixler and has clearly determined Movants' identities before filing this lawsuit in October 2022. Thus, the Court finds that Plaintiff cannot meet his burden of showing that his failure to

---

[140] *In re. Taxotere*, 995 F.3d at 391 (quoting *Oil Ins. Ltd. v. Dow Chem. Co.*, 977 So. 2d 18, 22 (La. Ct. App. 2007)).

[141] *Id.* (quoting *Cartwright v. Chrysler Corp.*, 232 So. 2d 285, 287 (1970)).

[142] *Id.* (citing *Terrel v. Perkins*, 704 So. 2d 35, 39 (La. Ct. App. 1997)).

[143] *Id.* (quoting *Rozas v. Dep't of Health & Hum. Res.*, 522 So. 2d 1195, 1197 (La. Ct. App. 1988)).

[144] Rec. Doc. 39 at 8.

[145] *Id.* at 11.

[146] Rec. Doc. 1 at 11; Rec. Doc. 30 at 4.

identify Movants was not willful or negligent. Accordingly, the prescriptive period for Plaintiff's claims are not subject to equitable tolling under the doctrine of *contra non valentem*. The Court sees no other reason why prescription would be suspended or interrupted and so Plaintiff cannot state a claim against Movants.[147]

## V. Conclusion

The Court lacks subject matter jurisdiction over Plaintiff's claims for damages against Movants in their official capacities and dismisses those claims without prejudice. Plaintiff's remaining claims against Movants are prescribed and so the Court dismisses those claims with prejudice. Therefore, the Court need not reach the other grounds for dismissal raised by Movants.[148] While the Court understands Plaintiff's difficult predicament, the facts alleged establish that his claims are prescribed as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Friedman's "Motion to Dismiss Amended Complaint"[149] and the State Troopers' "Motion to Dismiss Amended Complaint"[150] are **GRANTED.**

---

[147] The Court declines to grant Plaintiff an opportunity to further amend his complaint because Plaintiff has already filed the Amended Complaint and, regardless, doing so appears futile given Plaintiff's failure to indicate in his oppositions how he could cure the jurisdictional deficiencies or prescription issues identified by Movants. *See Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). The Court also notes that Plaintiff's service on Movants was insufficient because Plaintiff violated Federal Rule of Civil Procedure 4(c)(2) by personally serving Movants and Rule 4(e) by serving Movants through certified mail. However, because Plaintiff's claims are already prescribed, dismissing Plaintiff's claims without prejudice and allowing Plaintiff to properly serve Movants would be judicially inefficient.

[148] If Plaintiff's claims were not prescribed, the Court also notes that it would dismiss Plaintiff's claims against Friedman based on absolute judicial immunity. The Court would also dismiss any claim for injunctive relief against Movants because Plaintiff does not allege that Movants' conduct is ongoing.

[149] Rec. Doc. 40.

[150] Rec. Doc. 47.

**IT IS FURTHER ORDERED** that Plaintiff's claims for damages against Movants in their official capacities are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's remaining claims against Movants are **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this __9th__ day of May, 2023.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**